IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KENNETH L. GRAY,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>ORACLE CORP.,<br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON WARN ACT AND RETALIATION CLAIMS AND DENYING SUMMARY JUDGMENT ON THE ADEA CLAIM<br><br><br><br>Case No. 2:05-CV-534 TS |

I.  INTRODUCTION

Plaintiff Kenneth Gray brings a claim under the WARN Act,[1] a claim for age discrimination under the ADEA,[2] and a retaliation claim under the ADEA.  Defendant Oracle Corporation moves for summary judgment on all three claims.

---

[1] Worker Adjustment Retraining and Notification Act.

[2] Age Discrimination in Employment Act.

1

The Court grants summary judgment on the Warn Act and retaliation claims, leaving the ADEA claim for trial.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law."[3] The Court reviews "the entire record on summary judgment . . . in the light most favorable to the party opposing summary judgment."[4] "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."[5]

As an initial matter, Gray objects to the Motion because the Court previously denied cross motions for summary judgment on some of these issues. However, the parties have since engaged in further discovery, including depositions. The Court finds that the present motion for summary judgment is timely filed under the Amended Scheduling Order[6] and is not barred by the prior order.[7] "Until final decree the court always retains jurisdiction to

---

[3] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476 (10th Cir. 1990)).

[4] *Id.*

[5] *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1146 (10th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] Docket No. 144.

[7] *See Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995).

modify or rescind a prior interlocutory order."[8]  "A second motion for summary judgment is proper after a prior motion is dismissed, if supported by new material."[9]

### III.  WARN ACT CLAIM

The WARN Act requires employers to provide written notification to affected employees 60 days before a mass layoff at a single site of employment.[10] The Court previously denied summary judgment on this claim because Gray had shown an issue of fact on whether he continued to be an employee of Oracle HQ located in Redwood Shores, California, although he lived and worked in Salt Lake City, Utah.[11]

Oracle again moves for summary judgment on the WARN act claim, based upon (1) an email from Gray asking to be officially stationed at his Salt Lake City office rather than at his home in Salt Lake City; and (2) new deposition testimony that around the time Gray finished commuting from Salt Lake City, Utah to Oracle HQ in Redwood Shores, California, he was relieved of all of the duties he had been performing at Oracle HQ and was assigned

---

[8] *Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118, 1121 (10th Cir. 1979) (citing Fed. R. Civ. P. 54(b)).

[9] *Id. Accord Moore v. Busby* 92 Fed.Appx. 699, 702 (10th Cir. 2004) (holding that a "district court retain[s] its jurisdiction to modify or rescind a prior interlocutory order, including the authority to entertain a second motion for summary judgment after denying the first one").

[10] 29 U.S.C. § 2102(a).

[11] *See* Docket No.  (Denying summary judgment on WARN Act claim where Gray's Declaration stated that when he ceased working in Redwood Shores he continued in essentially the same assignments for that same IT department, but was able to do so from his office in his home in Salt Lake City due to technological advances).

new duties.[12]  Therefore Oracle has shown evidence that Gray's ties to the California headquarters came to an end in 2000.

Gray admits the facts relied upon Oracle, but contends that he continued to do the work he had been doing at HQ from Salt Lake City until his new supervisor arranged to remove the workload and authority he had exercised at Oracle HQ.[13]

Regardless of why he was reassigned, it is now undisputed that around the time he ceased commuting to Redwood Shores he was relieved of all of the duties he had been performing at Oracle HQ, and was assigned new duties.  In his deposition, Gray testified that Oracle refused his email request to officially station him at its Salt Lake City office because "you're stationed at Salt Lake City at home.  You're not stationed in downtown."[14] Whether he was assigned to his a remote location at his home in Salt Lake City[15] or to the office he used for four years in Salt Lake City, Gray's work on assignments associated with Oracle HQ had ceased.  Thus, there is no longer a jury question on whether, at the time he was laid off, his site of employment was the California headquarters, which was covered by the WARN act.  Gray's receipt of a WARN Act notice, without more, does not raise a jury issue where he has not shown evidence from which a jury could find that he was part of the mass layoff at a single site of employment within the meaning of the WARN Act.  Accordingly, Oracle is entitled to summary judgment on the WARN Act claim.

---

[12] Pl.'s Depo. at 90-98.

[13] Docket No. 177, Gray Decl. at ¶ 4.

[14] Gray Depo. at 164.

[15] *Id.*

## IV. AGE DISCRIMINATION

Gray claims his employment at Oracle was terminated because of age discrimination. Oracle says it was terminated due to (1) a reduction in force (RIF); and his selection for inclusion in the RIF was due to the combination of his performance problems, specifically, team work issues and the nature of his assigned duties at the time of the RIF.

> "In a RIF case, a plaintiff can demonstrate pretext in three principal ways." That is, [a plaintiff] can present evidence that (1) his own termination does not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual. This third approach is sometimes satisfied by a showing that the defendant actively sought to replace a number of RIF-terminated employees with new hires during the RIF general time frame.[16]

Gray contends he shows pretext in the following ways: a remark by his supervisor's supervisor (Dollahite) that the RIF would be used to get rid of "old dead wood"; Dollahite's direction to use the RIF to "hire back better qualified employees"; Dollahite's decision to lay off more employees than he was required to under Oracle's RIF guidelines; statistical evidence purporting to show that the chances of being included in the RIF were double for those over age 40; and the inconsistency between Oracle's current position that Gray was selected for the RIF based upon performance and Gray's supervisor's contemporaneous statement to him that the layoff was not "performance based."

Oracle contends that these cannot be used to show pretext because the Dollahite remark is a stray remark by a non-decision maker, the better qualified employees referred

---

[16] *Pippin v. Burlington Resources Oil And Gas Co.* 440 F.3d 1186, 1193 (10th Cir. 2006) (quoting *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998)).

5

to are not new hires, but those from the company with which Oracle merged and that the statistics are insufficient under Tenth Circuit case law.

The Court agrees that Dollahite's remark by itself would not satisfy Gray's burden because he has not shown that the remark referred directly to him or that it is linked to the personnel decisions or the individuals making those decisions in his case.[17]

The proffered statistical information is similarly insufficient under Tenth Circuit precedent such as *Pippin v. Burlington Resources Oil and Gas Co.*:

> "Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext." A "plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." Statistical evidence that does not adjust "for the various performance evaluations and departmental rankings of the employees included in the statistical pool" does not compare "similarly situated" employees and therefore "fails to eliminate nondiscriminatory explanations for disparate treatment."[18]

In this case, as in *Pippen*, the former employee's proffered statistical evidence "does not account for any of these different individuals' circumstances, skills, or prior performances."[19] Instead, the proffered statistical sample includes only employees with the title Database Administrators, and the only variables listed are inclusion in the RIF and

---

[17] *Merritt v. Tellabs Operations, Inc.*, 222 Fed.Appx. 679, (10th Cir. 2007) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

[18] *Pippin,* 440 F.3d at 1198 (quoting *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir.1996) and *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir. 1994)).

[19] *Id.*

age.[20]  Thus, the statistical evidence is not sufficient to support an inference that Oracle's stated reasons for selecting persons for inclusion in the RIF were pretextual.[21]

However, the Court finds that the remainder of Plaintiff's proffered evidence raises a jury question on pretext.  They include the inconsistency between Oracle's explanations for including Gray in the RIF, the dispute over whether his direct supervisor had problems with his performance and therefore could not transfer him, and the dispute over whether he had completed most of his job deliverables at the time of the RIF.  Accordingly, summary judgment will be denied on the ADEA claim.

## V. RETALIATION CLAIM

Gray contends that Oracle retaliated against him by knowingly providing the EEOC with a fabricated and falsely dated employment evaluation as part of Oracle's written response to Gray's charge of discrimination, and by violating Oracle's own policy that signed performance appraisals are to be archived for several years.

Oracle says (1) its actions before the EEOC are absolutely covered by the judicial proceeding privilege; (2) it made an honest mistake in sending the wrong document as the 2004 performance appraisal and that it has now submitted the correct document; (3) the performance appraisal sent was not material in that other documents fully support its position that Mr. Gray had problems working on a team; and (4) even assuming it sent knowing altered and false performance appraisals to the EEOC, such an action would  not

---

[20]Gray Second Decl. at ¶ 15 and Ex. 1.

[21]*Id.*

rise to the standard for retaliation under *Burlington Northern & Santa Fe Railway Co. v. White*[22] because a reasonable employee in Gray's shoes would not have found such conduct sufficiently adverse.

In support of its claim of absolute immunity, Oracle cites *Frederick v. Reed Smith, Shaw & McClay*.[23]  In that case, a plaintiff complained that statements alleging improper conduct made by the employer to the Pennsylvania Human Relations Commission (PHRC), the Pennsylvania equivalent of the EEOC, during the administrative proceedings on the claim of discrimination were made to retaliate.  The Pennsylvania federal court applied Pennsylvania law and dismissed the claim holding that "Statements made in judicial and quasi-judicial proceedings are absolutely privileged, and the privilege cannot be destroyed by abuse."[24]  The same rule has been applied by New York courts, again applying state law.[25]

Gray contends there is no immunity, citing *Williams v. W.D. Sports, N.M., Inc.*[26]  In *Williams*, the Tenth Circuit held that an employer's action in threatening to reveal allegations of sexual misconduct if a charge of discrimination was filed, and then making

---

[22] 126 S.Ct. 2405 (2006).

[23] 1994 WL 57212, *4 (E.D. Pa.1994).

[24] *Id.*

[25] *Hinds v. Magna Fabrics, Inc.*, 1997 WL 309378, *5 (S.D.N.Y. 1997) (applying New York law and dismissing defamation claim premised on written statements submitted by Defendant to the EEOC in response to inquiries made by the EEOC concerning the plaintiff's claim of discrimination).

[26] 497 F.3d 1079 (10th Cir. 2007).

allegations of sexual misconduct during the employee's unemployment hearing, supported a retaliation claim under Title VII.[27] In *Berry v. Stevinson Chevrolet,*[28] the Tenth Circuit held that the filing of criminal charges against a plaintiff constituted adverse employment action sufficient to show a retaliation claim.

In *Steffes v. Stepan Co.*,[29] the Seventh Circuit examined cases in this area and noted that "a state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action."[30] In *Timmerman v. U.S. Bank*,[31] the Tenth Circuit considered without deciding the issue of whether "the filing of counterclaims in response to discrimination claims brought by a former employee constitutes an adverse employment action," because it found that the plaintiff had failed to demonstrate that the employer's reason for filing the counterclaim was pretextual.[32]

In view of the *Williams* case, which involved quasi-judicial employment benefit proceedings, the Court does not find that Oracle's alleged actions in the quasi-judicial EEOC proceedings are absolutely privileged sufficient to defeat a federal cause of action for retaliation against Oracle.

---

[27] *Id.* at 1090.

[28] 74 F.3d 980, 986 (10th Cir. 1996).

[29] 144 F.3d 1070 (7th Cir. 1998).

[30] *Id.* at 1074.

[31] 483 F. 3d 1106 (10th Cir. 2007).

[32] *Id.* at 1123.

Having determined that absolute immunity does not bar the retaliation claim, the Court turns to Oracle's contention that its alleged retaliatory actions fail to rise to the *Burlington Northern* standard for retaliation.

> In order to establish a prima facie case of retaliation, an employee must show that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." Similar to a discrimination claim, once the employee establishes a prima facie case of retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If such a reason is successfully articulated, the employee must then demonstrate that the employer's proffered reason for the adverse action is pretextual.[33]

After *Burlington Northern*, in order to show actionable retaliation "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[34] The "significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."[35]

Oracle submitted the allegedly retaliatory documents to the EEOC on May 11, 2005, together with its letter answering Gray's charge of discrimination. The letter stated Oracle's position:

> Although Mr. Gray was a strong technologist, over the years he continuously had problems working with his team. . . . Attached. . . . are performance

---

[33] *Id.* at 1122-23 (quoting *Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1314 (10th Cir. 2005)).

[34] 126 S.Ct. at 2415 (applying materiality and reasonableness standards) (quoting *Rochon v. Gonzalez*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

[35] *Id.* at 2415.

10

reviews for Mr. Gray . . . clearly reflect[ing] that Mr. Gray's lack of teamwork had been an issue from 2001 going forward. . . .

As support for his age discrimination claim, Mr. Gray provided the names of five individuals whom he claims are younger database administrators who were not selected for the [RIF]. . . . In fact all the individuals Mr. Gray references were highly rated and ranked in the organization and therefore not "similarly situated" to Mr. Gray.

Unlike Mr. Gray, who received a "2" ("needs improvement") and a "3" ("meets expectations") on the performance evaluations in fiscal year 2004 (see Exhibit C), the five individuals all received higher ratings, including "5's" ("Outstanding") and "4s" ("exceeds expectations"). . . .

Mr. Gray was not a team player and consistently had difficulty working in a collaborative manner with his group, which was a critical requirement to do the job successfully. The performance evaluations and ranking of the group over the years substantiate Oracle's legitimate basis for the selection of Mr. Gray for layoff. . . .[36]

The following facts are undisputed: After he was terminated Gray filed a charge of discrimination with the EEOC against Oracle. The charge named his former direct supervisor and quoted a statement allegedly made by that person as evidence of pretext. Oracle has a policy that it does not provide references on former employees. Gray knew of the policy.[37] Despite knowing the policy, Gray testified that he asked for and received unofficial references from two of his former co-employees. Gray did not ask for an unofficial reference or otherwise list his former direct supervisor on his future job

---

[36] Def.'s Ex. 6 at 2-4. It appears that the difference in the scores between what Gray alleges was the fabricated performance evaluation and what Oracle contends was the correct appraisal were 3, 2, 3, 3, 3 instead of 3, 3, 3, 4, 3. Pl.'s Br. at 18-19.

[37] Gray Depo. at 253-54.

11

applications. Gray obtained his first new job[38] — a job he argues was temporary—on May 9, 2005.[39] Two days after Gray obtained new employment, Oracle sent its May 11, 2005 answer to the EEOC. In its Answer letter, Oracle alleged that Gray had been chosen for the RIF because he was not a team player and had lower performance evaluations than those employees not selected. In support, Oracle attached the performance appraisals that Gray contends were fabricated. Oracle did not disclose those performance evaluations to anyone other than its own counsel, the EEOC, and Defendant's counsel.

These undisputed facts distinguish this case from the situation in *Williams* or *Berry*. In *Berry*, the charges were false and were criminal. In *Williams*, the employer went to the employee after she filed her charge of discrimination and told her that if she would not resign or if she opposed her firing the employer would make rumors about the employee's purported "sexual conduct public without regard to their veracity" and, that in so doing, it would ruin the employee's marriage and damage her family.[40] The employer in *Williams* then made those apparently false rumors part of its response to the employee's unemployment application, stating falsely that it had evidence to support the rumors. Finally, the employer's lawyer allegedly told the employee that it would drop its opposition to her application for unemployment benefits—with its embarrassing, damaging, and

---

[38]Gray contends that this first job was as a temporary database administrator. Pl.'s Mem. at xi (response to Oracle's fact ¶ 19).

[39]Def.'s Ex. 4 (stating that Gray was declining out of state job offer, one of several secured, in order to accept offer in state).

[40]*Williams*, 497 F.3d at 1084

apparently false claims of sexual misconduct—only in exchange for the employee dropping the EEOC charge of discrimination. It was this "combination of threats and actions taken with the design of imposing both economic and psychological harm sufficient to dissuade" that was found sufficient in the aggregate to show that the *Williams* court found a reasonable employee could well find dissuading from "from making or supporting a charge of discrimination."[41]

In the present case, the employer made no threats. Oracle's position on the RIF as submitted to the EEOC was that Gray was chosen due to performance issues, including that he was not a team player. Oracle was required to state its position to the EEOC. Oracle raised the same defense with the EEOC that it that it relies upon in this case. Oracle supports its defense with evidence, including e-mail discussions with Gray about team work and job performance issues dating to 2003. Although Gray disputes Oracle's position that he was not a team player, and that he had performance issues, and claims that Oracle manufactured the performance appraisals, unlike in *Williams* or *Berry* the good faith of the defense in this case is supportable by a fair inference from other evidence–such as the string of e-mails–whose authenticity is not challenged. Therefore, Oracle's defense is not devoid of merit and, under *Timmerman*, the raising of a factually supported defense cannot form the basis of a retaliation claim.[42]

---

[41] *Id.* at 1090-91.

[42] 483 F.3d at 1123 (affirming summary judgment on retaliation claim based on filing state law counterclaims where plaintiff failed to rebut employer's proffered nondiscriminatory reason for filing its state law counterclaims).

13

Gray further contends that the act of filing the allegedly false performance evaluations with the EEOC was by itself an adverse employment action because it deprived him of the ability to list his former direct supervisor on future job applications.[43] Gray appears to argue that absent the disputed performance appraisals, his former direct supervisor would have violated the company policy against giving Gray a job reference. But in view of Oracle's policy against providing references—good or bad—on former employees, Gray does not show how the filing of the disputed job performance evaluations,[44] unknown to anyone outside of the EEOC process, could have been adverse to a reasonable employee in his shoes. It would not have been a reasonable expectation that a supervisor would violate a written company policy.

Considering these circumstances, the Court finds that a jury could not conclude that a reasonable employee in Gray's shoes would have found Oracle's conduct in allegedly filing fake performance appraisals in support of its answer to the EEOC sufficiently adverse that he well might have been dissuaded by such conduct from filing or supporting his charge of discrimination.

It is therefore

---

[43] Gray appears to argue that absent the disputed performance appraisals, his former direct supervisor would have violated the company policy against giving job references for Gray even though Gray had already named that supervisor in Gray's charge of discrimination.

[44] Of course it is the jury's province to determine which version of the disputed evidence on performance appraisals is credible.

ORDERED that Oracle's Motion for Summary Judgment (Docket No. 170) is GRANTED in favor of Oracle and against Gray on the claim under the WARN ACT and for Retaliation under the ADEA. The Motion for Summary Judgment is otherwise DENIED. This case will go forward on the jury trial on the claim of age discrimination.

DATED this 8th day of November, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge